RICHARD SCHOENFELDER AND BERTHA SCHOENFELDER, PLAINTIFFS, v. MARY T. POPE, DEFENDANT.

Submitted October 16, 1931—Decided February 11, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and CASE.

For the plaintiffs, *David Green* and *Nelson K. Mintz.*

For the defendant, *James F. Patten.*

PER CURIAM.

This case arises out of an automobile accident which occurred under rather unusual circumstances. The complaint was in three counts, the first count claiming for personal injuries alleged to have been sustained by the plaintiff Richard Schoenfelder, the second for personal injuries to his wife, Bertha, and the third for damages to the plaintiff Richard because of loss of services of his wife. The jury found a verdict against the defendant on each count; on the first for $3,000, on the second for $2,000 and on the third for $1,000. Seven reasons are advanced for a new trial but they are all covered by two propositions. The first is that the verdicts were against the weight of evidence, and the second that the damages were excessive. A part of the argument on this rule is directed at the refusal of the court to nonsuit, but this was not stated in any of the reasons filed and, moreover, is included in a consideration of the question whether the verdict as to liability was against the weight of evidence.

Four motor vehicles were involved in the accident. The two plaintiffs on the early evening of December 12th, 1929, were driving northward between New Brunswick and Metuchen on the Lincoln highway. The plaintiff Richard Schoenfelder was driving. It was practically dark and was

raining and sleeting and the road was slippery. All the evidence is to the effect that driving was difficult because the rain immediately froze upon the windshield, and more than one witness testified that, in order to see, it was necessary either to raise the windshield or to lean out of the car to one side. As the plaintiffs were going northward on the proper side of the concrete road, which was from thirty-two to thirty-five feet wide exclusive of dirt shoulders, a large truck belonging to parties not interested in this action, was coming in the opposite direction, and at the same juncture a man named Henderson, who was a witness in the cause, was driving his car easterly on a cross road and came into the Lincoln highway from the westward about the time that the truck was passing from north to south. The truck swerved to the left to avoid Henderson and in so doing brushed against the plaintiffs' car and damaged it, but neither car was disabled. Henderson, according to his testimony, saw the collision and thought the driver of the truck was trying to run away so he speeded up and headed off the truck bringing it to a stop a short distance south of the intersecting road. All of the witnesses agreed that the truck was partly off the concrete when it came to a standstill and that the front was somewhat more off the road than the rear. Another witness named Taylor, who operated a garage close by, testified that the truck was so near the side of the road and to a tree standing there that when Taylor undertook to walk in front of the truck to its right from behind, it was necessary to go around the tree.

To resume the story of the accident: Henderson being in the act of heading off the truck, the plaintiffs turned completely around until they were headed in the opposite direction, viz., from north to south; they followed up the truck and came to a standstill immediately in its rear. Mrs. Schoenfelder, who was on the right, got out and went to the right-hand door of the driver's cab and attempted to attract the attention of the driver but without success. Her husband followed her. Henderson was also on the spot, and getting no answer on the right, the three were collected to-

gether on the concrete at the left of the front of the truck, and in rather animated disputation with the driver, when Mrs. Pope, the defendant, driving a Ford came from the northward through the rain and sleet and ran into both the plaintiffs and Henderson as they were standing in the road, inflicting injuries on all of them. Henderson's claim had been settled before the trial and he was a witness for the plaintiffs. Some allusion is made in the brief to the fact that he testifield that he had been paid by an insurance company, but in respect to this it is sufficient to say that this testimony was drawn out by the defendant's own counsel on cross-examination and, consequently, the suggestion that it was irrelevant comes with a very bad grace from the holder of the rule.

With respect to the finding of negligence on the part of Mrs. Pope, we see no reason whatever for interfering with the verdict of the jury. The evidence touching the speed of her car was contradictory but the jury were fully justified in finding that she was driving under these unfavorable circumstances at least fifteen miles an hour with obstructed vision and a slippery road, having seen the two red tail lights ahead, and that she was unaware of the presence of the plaintiffs in front of her car until she actually struck them although her head lights were burning. She, herself, testified that she was aware that the two tail lights were stationary; and this situation made it incumbent upon her to proceed with such caution as the situation required. It is sufficient to say that if she had used the same care to see what was ahead of her that was used by the other witnesses, she would have seen these parties standing in the road in ample time either to avoid them or stop before hitting them. The evidence is in some contradicton as to the distance that the plaintiffs were standing from the truck, but as they were engaged in a hot dispute with the truck driver, demanding his license, &c., and as they necessarily knew that traffic was going on, they would naturally have stood quite close to the truck, and in fact their testimony is that they were close against it. Neither plaintiff was proficient in the English language, but as we read their evidence it is specific that

they were close to the truck and that in fact as they stood there, traffic was passing them in both directions without interference.

With respect to the contributory negligence of the plaintiffs in standing where they did, the case presents somewhat greater difficulty, but it was manifestly a question for the jury and we are unwilling to say that they took the wrong view of the matter. Contributory negligence is a defense and the burden of proving it is on the defendant. The evidence fairly shows conditions which would account for the plaintiffs being on the left side of the truck instead of the right. Mrs. Schoenfelder had attempted to get at the truck driver from the right-hand side, but the testimony is that door was nailed up on that side. While they were required in case they stood on the left of the truck to take such precautions for their safety as the situation required by way of maintaining a look out for cars coming southward, it was for the jury to say whether they failed of their duty in that regard, particularly in view of the evidence that other cars in the same direction had passed them in safety.

We conclude, therefore that the verdict is not against the weight of evidence.

With respect to the *quantum* of damages, we do not feel that any one of the verdicts should be set aside as excessive. As to the husband, he was rendered unconscious, was in the hospital for ten days or so, and afterwards at home in bed for several weeks. The attending physician testified in considerable detail to symptoms which indicate rather extensive internal injury which took some time to clear up, as well as a fracture of the right leg close to the knee. Among the symptoms were peritonitis and a pleurisy, both of which ultimately cleared up, and water on the knee. The injuries were undoubtedly painful and sufficiently serious as to justify a substantial verdict.

As to Mrs. Schoenfelder, the testimony indicated a total disability for three weeks and that she suffered from concussion of the brain and nervous shock, the effect of which were still discoverable at the time of the trial. This, we think,

justifies the verdict of $2,000 in her favor, and the verdict of $1,000 of her husband *per quod,* which includes a medical charge of $150.

Our conclusion, therefore, is that the rule to show cause should be discharged.